MARJORIE RESTAINO, Plaintiff-Appellant, v. MONTGOMERY WARD AND COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—87—1893

Opinion filed April 26, 1989.—Rehearing denied July 17, 1989.

B. John Mix, Jr., of Chicago, for appellant.

Dalton P. Grief, of West Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff-appellant, Marjorie Restaino, appeals from a judgment of the circuit court of Cook County awarding her $39,725.25 in damages against defendant-appellee, Montgomery Ward & Company (Ward). On appeal, Restaino argues that the trial court erred in (1) instructing the jury on assumption of risk and in denying her post-trial motion with respect to assumption of risk; (2) denying her petition for attorney fees and costs; and (3) failing to enter judgment in her favor on the issue of liability in view of Ward's failure to comply with discovery procedures. We affirm in part, and vacate and remand in part.

In the spring of 1979, Restaino purchased an exercise bicycle (bike) from Ward that was manufactured by Beacon Enterprises, Inc. (Beacon). On August 18, 1979, while Restaino was operating the bike, the sharp metal seat post which holds the seat cut through the plastic seat, impaling Restaino on the seat post. Restaino thereafter filed suit against Beacon and Ward.

At trial, Restaino testified that she was 19 years of age when she was injured by the bike. She had ordered the bike from a Ward catalog via telephone. When she received the bike, she took it home, read the instructions and put the unassembled bike together. Restaino put all of the approximately 45 pieces together and there were none left over. Restaino further testified that on August 18, 1979, she was riding the bike as she normally had when the seat post cut through the plastic seat, penetrated her underpants and impaled her body upon the metal seat post. The metal seat post penetrated Restaino's rectum and tore through her vagina and the area posterior to the cervix. Restaino was taken to the hospital and emergency surgery was performed that same day.

Dr. Carl Levy, the surgeon who operated on Restaino, testified that she had acute peritonitis of the abdomen. He had to repair Restaino's rectal area and vaginal injury. There was also blood in her abdomen. A colostomy operation was performed and Restaino remained in the hospital for approximately two weeks. Restaino returned to the hospital for additional surgery to close the colostomy. Thereafter, excessive fluid was taken from her lungs and she was placed in intensive care. Restaino was diagnosed as having pulmonary embolus. This occurred from the clotting of her blood in her thigh caused by the bike injury. The clot dislodged from her thigh and passed through her system, thereby blocking the passage of blood into her lungs. The result was chest pains and shortness of breath. Restaino remained in the hospital for three weeks and was

discharged. She was, however, readmitted within 24 hours and diagnosed as having an acute gall bladder attack. It was the surgeon's opinion that this gall bladder condition was caused by Restaino's injury from the bike and her subsequent operations.

Dr. Sheldon Ettleson, an internist, also testified. He stated that Restaino was readmitted to the hospital for pulmonary embolus to her left lung. The previous diagnosis was to the right lung. It was his opinion that she would have a permanent persistence of pulmonary embolus.

Two other witnesses, Penina Wilson and Ester Mae Perry, testified on behalf of Restaino. Both stated that they had purchased the same model exercise bike from Ward. Both suffered injuries similar to those of Restaino resulting from the seat post cutting through the plastic seat. Wilson testified that her bike was assembled by Ward for a fee of $5.

George Bombyk testified as an expert witness for Restaino. He stated that his experience in working for the National Safety Council led him to conclude that the instructions for this particular bike were too complicated for lay persons. The instructions contained no warnings regarding the potential dangers of not following the instructions. He further stated that the instructions should have directed the purchaser to inspect the seat and bolts each time prior to riding and that the seat should have had a metal plate underneath.

John Geremia testified on behalf of Ward. Geremia stated that he conducted three different tests on the bike. The compression test demonstrated that the bike could withstand 2,000 pounds of pressure before the seat post cut through the seat. The drop test indicated that it would take 150 pounds per foot of pressure before the machine collapsed. The third test, the drill test, demonstrated how long it would take the seat post to drill through the seat. Depending on the time factor, the results would indicate that the machine was not properly assembled and that the bolts were not put into place. Geremia relied on this test and concluded that the metal post cut through the seat of Restaino's bike because she did not properly connect the bolt to the seat post.

Following the close of evidence, Restaino made a motion to preclude assumption of the risk from jury consideration. This motion was denied. The jury returned a verdict in favor of Restaino in the amount of $113,501. However, the jury found that Restaino was guilty of assumption of the risk to the extent of 65%. Judgment was thereafter entered in favor of Restaino in the amount of $39,725.25. This appeal followed.

Restaino first argues that the trial court erred in submitting the issue of assumption of the risk to the jury. It is Restaino's position that no facts exist in the record which suggest or intimate that Restaino knew or understood that a risk existed in using the bike and proceeded to operate it in light of that knowledge. We agree.

The application of assumption of the risk to limit a plaintiff's recovery is based upon the notion that the plaintiff has voluntarily assumed an ascertainable risk and defendant should be relieved of legal duties stemming therefrom. (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 433, 481 N.E.2d 1037, 1041.) Assumption of the risk has generally been applied in cases where a plaintiff has engaged in activities known to be dangerous, has used products known to be dangerous or has knowingly misused nondangerous products. The test for determining whether a plaintiff has assumed the risk of using a product known to be dangerously defective is a subjective test. The plaintiff's knowledge, understanding and appreciation of that danger is at issue and not the reasoning and knowledge of a reasonable, prudent person. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 908, 513 N.E.2d 958, 964.) Thus, a plaintiff is deemed to have assumed the risk of a defective product only if he is actually aware of the defective nature of the product and appreciates its unreasonably dangerous character, but nevertheless chooses to voluntarily act in disregard of such known danger. (*King*, 160 Ill. App. 3d at 908, 513 N.E.2d at 964.) The defendant bears the burden of establishing that the plaintiff deliberately decided to encounter a known risk or was willing to take a chance. Therefore, a consumer's unobservant, unattentive, ignorant or awkward failure to either discover or guard against a defect should not be considered as a damage-reducing factor. *King*, 160 Ill. App. 3d at 908, 513 N.E.2d at 964.

In the instant case, the record does not support a finding that Restaino assumed the risk of the injury she received from the bike. It cannot be said that riding this bike was a dangerous and hazardous activity. If so, then an argument could be made that a warning should have been included with the product. There is no evidence that Restaino knowingly engaged in a dangerous activity, knowingly used a dangerous product or knowingly misused a nondangerous product. Restaino is merely a consumer who purchased what she believed to be a safe and effective weight-reducing bike. If she as a consumer was unobservant or unattentive and failed to discover a potential defect in the bike, such ignorance is not admissible and cannot be used against her to reduce her damages. We therefore find

that the evidence as a matter of law did not warrant an assumption of the risk instruction and that the trial court erred in submitting this issue to the jury. Accordingly, we conclude that Restaino was prejudiced by the jury's receipt of an assumption of the risk instruction and is thus entitled to a new trial on damages without the jury hearing evidence of her conduct.

Restaino next argues that the trial court erred in denying her costs and attorney fees. We disagree.

It is well settled that the allowance of attorney fees and costs is entirely dependent upon statutory authority. Only items allowed by statute can be recovered as costs. (*Gruidl v. Schell* (1988), 166 Ill. App. 3d 276, 284, 519 N.E.2d 963, 968.) The legislature may give the court power in general terms to make rules under which costs may be imposed, but any such statute must be strictly construed.

In the instant case, Restaino makes no reference to any statute which would give the court authority to award attorney fees and costs. Although the trial court did award Restaino sanctions in the amount of $1,607.90, we cannot find that she is entitled to attorney fees and costs in the absence of statutory authority.

In light of our decision of the previous issues, we need not address the remaining issue raised on appeal. Accordingly, the judgment entered in favor of Restaino and against Ward on the issue of liability is affirmed. The judgment rendered on damages is vacated and this cause is remanded for a new trial on the issue of damages only. The judgment denying Restaino attorney fees and costs is affirmed.

Affirmed in part; vacated and remanded in part.

FREEMAN, P.J., and WHITE, J., concur.