THELMA MINFIELD, Plaintiff-Appellant, *v.* E. ALLEN BERNARDI, Director, Illinois Department of Labor, *et al.*, Defendants-Appellees (Marshall Field and Company, Defendant).

First District (1st Division)   No. 83—1462

Opinion filed February 6, 1984.—Rehearing denied March 20, 1984.

Legal Assistance Foundation, of Chicago (Jeffrey B. Gilbert, Timothy Huizenga, and Michael Pardys, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of counsel), for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Thelma Minfield (plaintiff) has appealed from an order affirming denial by the Department of Labor (department) of plaintiff's claim for unemployment compensation (Ill. Rev. Stat. 1981, ch. 48, par. 300 *et seq.*). The briefs before us are unnecessarily enlarged and cite many unnecessary cases. As we view the record here, we find one dispositive issue: whether plaintiff is entitled to unemployment compensation based upon her last employment with Marshall Field and Company (Field's).

Prior to December 9, 1981, plaintiff worked full time for the city of Chicago and also worked part time for Field's. On December 9, 1981, plaintiff was discharged by the city of Chicago. Neither the circuit court nor this court is concerned with or has jurisdiction over the relationship and the rights of the parties as regards plaintiff's employ-

ment with the city of Chicago.

However, on January 3, 1982, plaintiff left her work at Field's after her request for full-time work had been denied. Plaintiff applied for compensation. The referee and the Board of Review denied plaintiff's claim. The circuit court affirmed the denial. Plaintiff appealed to this court.

The record before us shows the following facts. Plaintiff had worked to support her eight-year-old son, who has a speech problem and a learning disability. Her part-time wages from her employment at Field's were insufficient to pay her expenses, including the cost of a baby-sitter.

At the hearing plaintiff told the referee she left her employment at Field's because, "I needed more money. I couldn't afford to pay my baby-sitter. I needed more hours. They said they didn't have any available. They had a freeze on hiring." Plaintiff told the referee she was being paid the agreed rate by Field's. This employer did not cause her to leave or do anything to break the contract of hire.

In denying plaintiff's claim the Board of Review found:

"*** the evidence established that the claimant left work because she was dissatisfied with the amount of money which she had received working only part time. This is not good cause attributable to the employer within the meaning of the statute."

Plaintiff has raised other issues before reaching the merits of her claim to compensation:

I

On March 28, 1983, the trial judge, upon consideration of the record and arguments of the parties, entered an order finding plaintiff was discharged by the city of Chicago for misconduct and plaintiff was therefore ineligible for benefits based on her city employment. The trial judge also found the decision that plaintiff voluntarily left work from Field's without good cause was "against the manifest weight of the evidence." The trial court therefore ordered that plaintiff was eligible for benefits based on her earnings from Field's "if she was otherwise able and available."

Within 30 days plaintiff filed a timely post-trial motion. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—1203.) The motion stated that the trial court had no jurisdiction over plaintiff's claim for benefits based upon her employment with the city of Chicago. Plaintiff stated no appeal had been taken from the referee's decision concerning the city employment.

On May 11, 1983, the trial judge considered plaintiff's post-trial

motion in open court and heard argument of counsel. At that time, which was more than 30 days after judgment, the department filed a written "response" to plaintiff's post-trial motion. The department prayed that the post-trial motion be denied and alternatively for a decision that plaintiff left her employment with Field's without good cause.

After this hearing, on May 11,.1983, the trial court entered an order which vacated the previous order of March 28, 1983. The court ordered that plaintiff was denied benefits based upon her employment with Field's. This order did not mention plaintiff's employment with the city. The within appeal followed.

■ We hold the timely post-trial motion filed by plaintiff prevented the judgment from finality after the expiration of 30 days. (See *In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95.) The timely post-trial motion gave the trial court complete jurisdiction over the entire matter "until the disposition of any pending post-trial motion." (*In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 931-32, 409 N.E.2d 461, and cases there cited. See also *In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95.) The fact that the department's post-trial motion or "response" was not timely filed as regards this 30-day period did not affect the power of the trial court to modify the judgment entered March 28, 1983. (*Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191; see also *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 460, 308 N.E.2d 611.) Consequently we find and conclude that the trial court had full and complete jurisdiction to enter the order of May 11, 1983.

Plaintiff relies primarily upon *Putz v. Schulte* (1982), 104 Ill. App. 3d 128, 432 N.E.2d 1070. The court there held that a late post-trial motion should not have been considered by the trial court and the decision in *In re Marriage of Parello* would not require the court to reach a different conclusion. *Putz* may affect the viability of defendant's motion or "response." However, that fact is fundamentally irrelevant. *Putz* does not affect the applicability of *Freeman* which holds that once a timely post-trial motion is filed the trial court may modify any aspect of the original judgment on its own motion. See *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 106.

## II

Plaintiff criticizes the hearing held by the referee. Plaintiff contends the referee denied her a fair hearing because he did not fulfill his duty to ascertain all of the pertinent facts surrounding plaintiff's claim. See *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 393

N.E.2d 638.

■■ Our study of the hearing in question convinces us the referee allowed plaintiff a complete opportunity to explain her reasons for leaving her employment with Field's. The referee's questions to plaintiff were nonadversarial and not leading. Plaintiff honestly told the referee her reasons for leaving her job as above set forth. At the end of the hearing, the referee asked plaintiff if there was anything additional she wished to state for the record. Plaintiff replied simply that she left employment with Field's because she was not making enough money. The referee was apprised of all the pertinent facts which have since been submitted to this court. Therefore, we conclude plaintiff was granted a fair and impartial hearing and was afforded due process of law. See *Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 895, 414 N.E.2d 1244.

### III

Plaintiff contends she received no notice of her right to counsel. The department responds that its practice is to mail an instruction sheet to each claimant with the notice of hearing. This sheet states that although legal services are "not necessary," either an attorney "or someone else" may represent or assist the claimant at the hearing. Plaintiff responds there is no evidence in the record that plaintiff ever received such an instruction sheet.

■■ In any event, in our opinion, this point raised by plaintiff is meaningless. Plaintiff had the right to appear *pro se* or with counsel as she chose. In this type of situation, plaintiff has waived counsel and was therefore responsible for conducting her own case. (*Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 21, 392 N.E.2d 371.) We will add that plaintiff was not prejudiced in any manner by her failure to have counsel. Indeed, if such prejudice had ever existed, it would have been more than overcome by the thorough and lengthy presentation of plaintiff's counsel in the trial court and in this court.

### IV

■■ Plaintiff contends the referee and the Board of Review failed to make findings of fact. We reject this contention. The referee made a specific finding of fact that plaintiff quit her part-time job because it was not paying enough to live on. The referee also expressed the conclusion that the fact that plaintiff left work was not attributable to the employer and therefore plaintiff left without "good cause" as defined in the statute. The Board of Review similarly found that the evidence established that claimant left work because she was dissatisfied

with the amount of money she would receive working only part time. Both the referee and the Board of Review made good and sufficient findings of fact. See *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 326, 388 N.E.2d 398.

## V

■ Turning at long last to the merits of the present litigation, we agree with the determination of the department's Board of Review that plaintiff's decision to leave the employ of Field's because of her dissatisfaction with wages and hours did not constitute "good cause attributable to the employer within the meaning of the statute." See Ill. Rev. Stat. 1981, ch. 48, par. 431(a).

The litigants have not cited, nor have we discovered, a similar case in Illinois. However, we have found cases from other jurisdictions which have concluded that dissatisfaction with wages paid does not constitute good cause voluntarily to leave employment. See, *e.g., Weber v. Catherwood* (1969), 32 App. Div. 2d 697, 299 N.Y.S.2d 957; *Harris v. Daniels* (1978), 263 Ark. 897, 567 S.W.2d 954; *Mosley v. Pennsylvania Unemployment Compensation Board of Review* (1974), 15 Pa. Commw. 447, 327 A.2d 199.

Similarly, courts have determined that dissatisfaction with the number of working hours does not constitute good cause to leave employment. In *White v. Levine* (1976), 52 App. Div. 2d 1003, 383 N.Y.S.2d 438, the court held that the employee's refusal to accept a reduction of working hours did not constitute good cause. (Accord, *Hedrick v. Employment Division* (Or. App. 1976), 548 P.2d 526.) In *Keiper v. Pennsylvania Unemployment Compensation Board of Review* (1978), 38 Pa. Commw. 117, 120, 391 A.2d 1146, 1148, the claimant testified "[I] wasn't getting my 40 hours a week and I was disgusted and I quit." The court held such a reason did not constitute good cause for leaving employment. Accord, *Owen v. Unemployment Compensation Board of Review* (1976), 26 Pa. Commw. 278, 363 A.2d 852.

Finally, in *Zielenski v. Board of Review, Division of Employment Security, Department of Labor & Industry* (1964), 85 N.J. Super. 46, 52, 203 A.2d 635, 638, the court stated:

> "Claimant's primary reason for voluntarily quitting his job *** was the unsteadiness of the job and the fact that he was working, on an average, only one or two days a week at a daily wage of $24.40. But this did not constitute good cause for giving up this partial employment for no employment at all.
> * * *

\*\*\*. The employee who works at an unsteady employment, averaging only one or two days a week at his accustomed trade, may well be dissatisfied with his job and seek another which provides more regular employment and better weekly wages. But he has a reasonable opportunity to pursue that course on the days when he is not working \*\*\*."

In the case at bar, it is clear from plaintiff's own testimony that she left her employment at Field's because she was dissatisfied with the amount of money she was earning and because Field's would not give her full-time employment. It is also clear that Field's did nothing which altered the terms, conditions, hours, or compensation of the job plaintiff originally accepted.

Plaintiff relies on five cases all of which we find distinguishable from the case at bar:

In *Keystone Steel & Wire Division v. Department of Labor* (1976), 37 Ill. App. 3d 704, 346 N.E.2d 399, and *Brainard v. Unemployment Compensation Com.* (Del. Super. Ct. 1950), 76 A.2d 126, the compensation paid by the employer to the claimant was substantially reduced. On the contrary, in the case at bar, the compensation paid by Field's to plaintiff remained constant.

In *Lyons v. Appeal Board* (1961), 363 Mich. 201, 108 N.W.2d 849, and *Laya v. Cebar Construction Co.* (1981), 101 Mich. App. 26, 300 N.W.2d 439, claimants left employment which was over 270 miles from their homes and families. Clearly no such factor is present in the case at bar.

Finally, in *In re Claim of Marcus* (1951), 278 App. Div. 1037, 106 N.Y.S.2d 901, the claimant quit employment as an alternate taxi driver where he was obliged to arrive on the job daily without any assurance that he would work any hours that day. On the contrary, in the case at bar, plaintiff's employment with Field's was dependable with assured hours and compensation.

The judgment appealed from is accordingly affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.