MITCHELL WHEELER, Plaintiff-Appellant and Cross-Appellee, v. SUN-BELT TOOL COMPANY, INC., *et al.*, Defendants-Appellees and Cross-Appellants (Evans Implement Company, Defendant).

Fourth District No. 4—88—0263

Opinion filed March 17, 1989.—Modified on denial of rehearing May 18, 1989.

James Walker, Ltd., of Bloomington, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, David E. Jones, and Kathryn A. Spalding, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Mitchell Wheeler, plaintiff, was injured while using a "Chain-A-Part" tool to break a gathering chain on his employer's combine. A fragment of metal entered plaintiff's left eye after the punch on the tool broke. Plaintiff sued defendants, alleging the tool was unreasonably dangerous and alleging defendants had breached a warranty that the punch would not break. The jury returned a verdict for defendants on the products liability count and returned a verdict for plaintiff and against Sunbelt Tool Company, Inc. (Sunbelt), and Smith Tool Company, Inc. (Smith Tool), on the warranty count. However, the jury reduced plaintiff's damages award by 80% due to a finding that he misused the product.

Plaintiff appeals, arguing: (1) misuse is not an affirmative defense in a products liability action based upon breach of warranty; (2) a product cannot be misused when it is used for the purpose intended by the manufacturer; (3) the trial court erred in its rulings on instructions concerning misuse; (4) the trial court committed prejudicial error in failing to give a form of the verdict which required itemization of damages; (5) the trial court erred in restricting examination of a witness to show bias; (6) the trial court erred in allowing Smith Tool to amend its answer; (7) plaintiff was entitled to judgment notwithstanding the verdict on count VII; and (8) the trial court erred in finding no jury trial was available on count VII.

Defendants cross-appeal, arguing they are entitled to judgment notwithstanding the verdict on the warranty count and alternatively arguing the trial court erred in refusing their special interrogatory.

We affirm.

Sunbelt and its successor corporation, Smith Tool, manufactured the tool involved in the instant case. Lloyd Smith, the retired chief executive officer of Smith Tool, stated Rains Manufacturing Company (Rains) developed a rivet tool. Rains became S/V Tool Company (S/V Tool), which modified the Rains tool into the Chain-A-Part. S/V Tool Company was incorporated as Sunbelt. Smith Tool had assumed the assets and liabilities of Sunbelt. Subsequently, Smith sold his stock in Smith Tool to Center Industries.

The purpose of the Chain-A-Part tool is to break apart old and new roller chain. Roller chain consists of a series of outer and inner

plates with cylinders at each end of the link. Bicycle chain is roller chain. The links are held together by chain pins, rivets, running through the holes in the cylinders, which are pressed against the outer plates, but are free on the inner plate. The chain pin protrudes over the outer plate. The size of roller chain is measured by the distance between the pins. Size 50 chain has five-eighths of an inch from the center of the first pin to the center of the next. Size 60 chain measures six-eighths of an inch between chain pins. Size 80 chain measures one inch between the centers of the chain pins. Pin size is standard for each dimension of chain. Size 80 chain would have a larger pin than size 60 chain. New roller chain is tight with very little lateral movement as no spaces exist between the parts. As the chain wears, spaces develop and the chain loosens. Roller chain will not function correctly if it is too loose. Therefore, it is necessary to remove links to ensure a proper fit.

The Chain-A-Part was designed to remove the chain pins. The body is iron. The top of each end of the tool contains a bolt screw, punch, and cylinder. The bottom of each end has a hole through which the broken chain pin falls, when punched out of the chain. One end of the tool is stamped 50/60; the other end of the tool is stamped 80.

Terry Michael Bender testified plaintiff was repairing a chain on a cornhead of a combine and needed to remove a section of the chain to shorten it. Plaintiff placed the chain in between the tool slot and centered the punch over the top of the chain pin. Plaintiff used a crescent wrench to screw the punch down to break the rivet. He had turned the top bolt six times when the injury occurred.

Bender stated no noise preceded the incident. He saw the chain tool fall to the ground and saw plaintiff grab his eye. Bender observed the tool the following morning and noticed the punch was broken. The punch was not broken when he and plaintiff started to use the tool the preceding day. Bender did not remember seeing any instructions for the tool's use. He never saw anyone show plaintiff how to use the tool. Bender stated he never saw plaintiff turn the sleeve (cylinder) down to the chain. However, he was sure plaintiff did so. Bender examined a chain which he believed was the chain involved in the incident. One chain pin had been partially pushed through the links, tightening the loose spaces. Bender stated the chain appeared to be larger than size 80 chain. Plaintiff was using the 50/60 end of the tool.

Dale Evans, plaintiff's employer, stated he saved the chain involved in the incident, but forgot it until an employee reminded him of it. Evans and his father own Evans Implement Company (Evans Implement). The tool belonged to the company. Evans stated to the

best of his knowledge, the company had an open house in January, February, or March 1980. He believed the tool was a gift from one of the representatives who participated, Fesco Equipment Company (Fesco). Evans could not verify the date of the open house. He did not show plaintiff how to use the tool, which was packaged when received. He had not read any instructions associated with the tool. Evans further stated that he had no idea at which open house the tool was given to the implement company. There was no way to be sure which year the open house was held in.

Plaintiff testified he worked for Evans Implement setting up and repairing farm machinery. Prior to the instant incident, he had used the Chain-A-Part tool two or three times. No one had demonstrated for him how to use the tool. He did not see any instructions. At approximately 11:30 a.m., he and Bender were repairing a combine with a cornhead. The gathering chain on the cornhead was too loose for proper adjustment. He thought it would be a good chance to show Bender how to use the tool. Plaintiff put the chain in the tool and ran the punch out of the barrel (cylinder) approximately one-eighth of an inch. Then, he lowered the cylinder until the punch touched the chain pin. He started to push the chain pin through. After three, one-quarter turns he felt something hit him in the eye. Plaintiff stated he used the 50/60 end of the tool. He did not know the sleeve's (cylinder's) purpose was to protect and support the punch. Plaintiff admitted that he may have made a contrary statement during a deposition. Plaintiff agreed that if the 50/60 end was used to break size 80 chain, and if the size 80 chain pin was bigger than the hole in the tool, the chain pin would have no place to go. Plaintiff never saw anything which said to tighten the cylinder to prevent injury if the punch broke.

Dennis Lockhart, an ophthalmologist, treated plaintiff after the injury to his left eye. The piece of metal could not be removed from the eye without causing greater injury. The metal had passed completely through plaintiff's eye, which was now nonfunctional. The eye is deteriorating, and eventually, plaintiff may elect to have the eye removed, with a prosthesis implanted.

Lloyd Smith, retired president of Smith Tool, testified that he had a financial interest in tools sold by Center Industries. In buying Smith Tool, Center Industries was paying him a percentage of the gross sales price of the tools. The trial court sustained defendants' objection to questions asking how much per month Smith was receiving from Center Industries.

Smith stated the punch size on a newer tool handles sizes 50 to 80 chain. It is the same size punch as that on the tool plaintiff used. In

1970, Smith was the chief executive of S/V Tool. Plaintiff's exhibit 19 was printed in 1970 and used as a package insert through 1984. Smith never ordered it redrafted or changed. The package insert stated the tool was designed for size 50, 60, and 80 chains. S/V Tool always knew the tool would be used on old chain. They sold the tool to dealers and to those who repaired machinery. The sleeve, cylinder, holds the chain still while pressure is applied to the top of the chain pin. The punch pushes the chain pin through the link in the chain. There will be no movement between the chain pin and the top plate until all slack is taken out of the chain. Smith agreed the promotional material stated the punch would not break.

Smith believed that before any pressure is put on the punch, the clamping sleeve, cylinder, should be turned down to the chain. If done with new chain, the cylinder would remain in contact with the top plate of the chain even as the pin is driven through the chain. If done with old chain, as soon as the punch starts moving the chain pin through the bottom plate, it would move the top plate away from the cylinder until all slack is out of the link. Smith stated that S/V Tool tested old and new chain.

Smith did not draft the material provided in the package but believed the sales manager did so. The "won't break" language was inserted out of enthusiasm. In comparison with other tools, breakage did not happen. However, he believed the drafters of the promotional literature were "carried away" with enthusiasm. However, when the tool was properly used in his tests, the punch did not break. When punches broke, the company assumed the tool was used improperly. Punches broke occasionally. The instructions and promotional literature were not changed as a result. The manufacturer knew that some people were not placing the cylinder all the way down to the chain, because when they received returned tools, the punches looked as if this had occurred.

Smith stated the manufacturer did not warn of the possible consequences of improper use. It should have been obvious to an experienced person that the sleeve (cylinder) served as a clamping device and a protective device. When the manufacturer first sold the tool, it knew a broken fragment could go anywhere if the cylinder were not down. However, the punch would bend before it broke. Smith knew of another case where a person alleged the Chain-A-Part punch had fractured and a piece had entered his eye. The instructions with the package say to bring the sleeve all the way down to the chain.

On cross-examination, Smith stated he designed the rivet tool and the Chain-A-Part tool. The punch on the instant tool bent before it

broke. This was consistent with the way it was supposed to perform. Each package contained a promotional-instruction page. The back part of the page contained instructions for the use of the tool. Smith believed that if used properly, the punch would not have broken in the instant case.

Lyle Jacobs, a metallurgical engineer, testified for defendants. He examined the tool in question, performing nondestructive and destructive tests. The bent punch indicates the sleeve was not in place when the tool was used. He believed after his first, nondestructive test, the punch broke as the result of bending force. The sleeve's purpose was to support the punch. Since the sleeve was not in position, the punch broke because of improper use.

Jacobs was asked to assume the 50/60 end was used to break size 80 chain. He stated if that occurred, the tool was misused because the diameter of the chain pin appeared to be larger than the diameter of the hole in the casting. After destructive testing, he found no evidence of defect in the punch.

Initially, defendants argue the trial court erred in failing to grant their motion for judgment notwithstanding the verdict on the warranty count because plaintiff's complaint wholly failed to state a cause of action for breach of express warranty. They contend no sale occurred and plaintiff was not a third-party beneficiary of any sale which did occur. Plaintiff argues defendants have waived review of these matters by failing to raise them in a timely, post-trial motion. Defendants respond that the motion was timely and even if untimely, this court should consider their arguments because the plaintiff's failure to plead and prove his cause of action is a defect which may be raised for the first time on appeal. For clarity, we will first address defendants' cross-appeal issue.

In the instant case, the jury trial on products liability and warranty counts and the bench trial on the consumer fraud count were held concurrently. On November 3, 1987, the trial court entered judgment on the jury verdict. It noted count VII was still undecided. No notice of the entry of judgment was sent to the parties. Plaintiff filed his first post-trial motion on December 1, 1987. On December 22, 1987, a hearing was held to argue count VII. At that time, defendants learned judgment had been entered on the jury verdicts. Defendants orally moved to vacate the judgment or for an extension of time to file motions. This was followed by a written motion. The trial court, on its own motion, granted an extension of time to file post-trial motions. Plaintiff did not object to the extension of time, and plaintiff filed an amended post-trial motion.

■ Section 2—1202(c) of the Code of Civil Procedure states a post-trial motion must be filed within 30 days after entry of judgment or within any further time the court may allow upon a motion made within the 30 days. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1202(c).) If a post-trial motion is filed within the 30 days after judgment, the trial court retains jurisdiction over the cause until the disposition of any pending motion. It may act on any points raised in the motion and on any error which the court feels must be remedied to do justice between the parties. *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191; *Minfield v. Bernardi* (1984), 122 Ill. App. 3d 97, 100, 460 N.E.2d 766, 768; *Welch v. Ro-Mark, Inc.* (1979), 79 Ill. App. 3d 652, 657, 398 N.E.2d 901, 904.

In *Minfield,* the plaintiff filed a timely post-trial motion from a trial court decision determining eligibility for unemployment compensation. At the time of the hearing on plaintiff's motion, more than 30 days after judgment, the defendant filed a post-trial motion in response to plaintiff's motion. The trial court granted in part the relief prayed for in defendant's motion. On review, the appellate court held the timely filing of the post-trial motion by plaintiff prevented the judgment from becoming final after the expiration of 30 days. The timely motion gave the court complete jurisdiction over the entire matter until its disposition. The court noted that the fact that defendant's motion was not timely did not affect the power of the trial court to modify its judgment to do substantial justice between the parties. See also *Welch,* 79 Ill. App. 3d 652, 398 N.E.2d 901; but see contra *Putz v. Schulte* (1982), 104 Ill. App. 3d 128, 432 N.E.2d 1070.

■ Plaintiff argues *Mau v. Unarco Industries, Inc.* (1985), 135 Ill. App. 3d 736, 481 N.E.2d 1207, controls the instant case. *Mau* is distinguishable from the instant case. In *Mau,* the only post-trial motion filed was untimely. Here, plaintiff's timely post-trial motion preserved the trial court's authority to reconsider the issues concerning the jury trial as specifically raised by plaintiff or in any other fashion affecting substantial justice between the parties. (*Freeman,* 33 Ill. 2d 103, 210 N.E.2d 191; *Minfield,* 122 Ill. App. 3d 97, 460 N.E.2d 766; *Welch,* 79 Ill. App. 3d 652, 398 N.E.2d 901.) Additionally, one of the issues raised by defendant challenges the sufficiency of the complaint as a matter of law. An objection may be made to a complaint for the first time on appeal if it appears as a matter of law that the complaint wholly fails to state a cause of action. *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 512 N.E.2d 1027.

■ Initially, defendants argue the warranty provisions of the Uniform Commercial Code—Sales (UCC) (Ill. Rev. Stat. 1987, ch. 26, par.

2—101 *et seq.*) require a sale of goods. In the instant case, the tool was a "gift." Therefore, defendants contend no warranty applies and the trial court erred in denying their motion for judgment notwithstanding the verdict. Judgment notwithstanding the verdict should be granted only in those cases in which all of the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon it could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Cherry v. McDonald* (1988), 176 Ill. App. 3d 471, 531 N.E.2d 78; *In re Estate of Wrigley* (1982), 104 Ill. App. 3d 1008, 433 N.E.2d 995.

■ Defendants did not raise this issue below or contest that a sale of the Chain-A-Part tool to plaintiff's employer had occurred. In fact, in all of their arguments and in their motion for judgment notwithstanding the verdict, defendants refer to plaintiff's employer as the "buyer." Failure to raise an issue in the trial court waives review of the issue. (*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548.) We note that defendants conceded this issue during the trial of the cause. Generally, where a party concedes an issue below, he cannot dispute the issue on appeal. See generally *Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 458 N.E.2d 644.

On the merits, the warranty sections do refer to warranties in connection with the sale of goods. (Ill. Rev. Stat. 1987, ch. 26, pars. 2—313, 2—314, 2—315, 2—318.) A sale is a transfer of title in exchange for consideration. (*Burrus v. Itek Corp.* (1977), 46 Ill. App. 3d 350, 360 N.E.2d 1168.) Here, the witnesses stated Fesco gave the tool to Evans Implement because the company allowed Fesco to show tools at an open house. The parties' characterization of a transaction as a gift is not controlling. The price may be barter, an exchange, trading in other goods, or rendering of service. (1 R. Anderson, Sales §2—106:7, at 600-01 (3d ed. 1981).) If this issue would have been contested below, plaintiff could arguably have proved an exchange of consideration for the tool. Defendants have waived review of this contention.

■ Defendants next argue plaintiff, as an employee of the purchaser of the tool, is not a person included within the class of third-party beneficiaries entitled to bring a breach of warranty action against a remote manufacturer. They assert *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 455 N.E.2d 142, *Knox v. North American Car Corp.* (1980), 80 Ill. App. 3d 683, 399 N.E.2d 1355, and *Whitaker v. Lian Feng Machine Co.* (1987), 156 Ill. App. 3d

316, 509 N.E.2d 591, were wrongly decided. They argue *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, is inapplicable to the instant situation as *Berry* deals with vertical, not horizontal, privity.

Section 2—318 of the UCC states:

> "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." (Ill. Rev. Stat. 1987, ch. 26, par. 2—318.)

Illinois has adopted the first alternative section 2—318. In *Berry*, a vertical privity case, the court found the section did not require privity between a purchaser and remote manufacturer. The court held privity was not required when a buyer who has sustained personal injuries predicates recovery against a remote manufacturer for a breach of implied warranty.

In *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 503 N.E.2d 760, an economic injury case, the court refused to extend *Berry* to cases involving solely economic injury. However, the *Szajna* court noted the law recognizes horizontal privity, which refers to those who are not in the distributive chain of a product but who use the product and retain a relationship with the purchaser, such as a member of his family. (*Szajna*, 115 Ill. 2d 294, 503 N.E.2d 760; see also *Collins Co. v. Carboline Co.* (1988), 125 Ill. 2d 498, 532 N.E.2d 830.) In *Collins*, the court noted in *dicta* that section 2—318 of the UCC and the comments leave "a door at least slightly ajar for future extension of some warranties in appropriate circumstances to nonprivity plaintiffs." (*Collins*, 125 Ill. 2d at 516, 532 N.E.2d at 842.) *Collins* cited *Whitaker* as an example of such a case.

In *Whitaker*, a personal injury case, the court held a warranty extends to any employee of a purchaser who is injured in the use of the goods, as long as the safety of the employee and the use of the goods were either implicitly or explicitly part of the basis of the bargain when the employer purchased the goods. (*Whitaker*, 156 Ill. App. 3d 316, 509 N.E.2d 591.) *Whitaker* applies in the instant case. See also *Knox*, 80 Ill. App. 3d 683, 399 N.E.2d 1355; *Boddie*, 118 Ill. App. 3d 520, 455 N.E.2d 142; but see contra *Hemphill v. Sayers* (S.D. Ill. 1982), 552 F. Supp. 685; *In re Johns-Manville Asbestosis Cases* (N.D. Ill. 1981), 511 F. Supp. 1235, 1239-40.

Defendants next argue they should have been granted judgment as a matter of law because plaintiff failed to plead and prove an ex-

press warranty action. Defendants contend plaintiff neither pleaded nor proved the express warranty was the basis of the bargain between Evans Implement and Fesco. The warranty counts of plaintiff's complaint alleged defendants sold or manufactured the tool, which was advertised as suitable for taking apart agricultural chains, and sold it to Fesco. Plaintiff's employer eventually owned the tool. Defendants "expressly warranted" the "high carbon, tool steel, heat treated punch won't break." Plaintiff was using the tool when it broke. Therefore, defendants breached their warranty. The jury was instructed that plaintiff had alleged defendants breached their warranty which was stated in the instructional material. The jury was not specifically instructed on implied warranty theories, such as merchantability or fitness for a particular purpose. On appeal, plaintiff assumes the position that he pleaded and proved breach of an express warranty.

■ Section 2—313 of the UCC provides for express warranties by affirmations of fact made by the seller to the buyer which become a part of the basis of the bargain between them. (Ill. Rev. Stat. 1987, ch. 26, par. 2—313.) A warranty of merchantability is implied into a sale if the seller is a merchant. To be merchantable, goods must be fit for their ordinary purpose and conform to any promises made on the label. Ill. Rev. Stat. 1987, ch. 26, par. 2—314.

■ In an express warranty action, plaintiff must show breach of an affirmation of fact or promise which was made part of the basis of the bargain. (*Redmac, Inc. v. Computerland of Peoria* (1986), 140 Ill. App. 3d 741, 489 N.E.2d 380; *Stamm v. Wilder Travel Trailers* (1976), 44 Ill. App. 3d 530, 358 N.E.2d 382.) Express warranties are contractual in nature. (*Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 349 N.E.2d 627.) Documents, brochures, and advertisements may constitute express warranties. (*Crest Container Corp. v. R.H. Bishop Co.* (1982), 111 Ill. App. 3d 1068, 445 N.E.2d 19; Ill. Ann. Stat., ch. 26, par. 2—313, Uniform Commercial Code Comment, comment 5, at 220 (Smith-Hurd 1963); Annot., 75 A.L.R.2d 112, 128-33 (1961).) Such affirmations made during the bargain are presumed to be a part of it unless clear, affirmative proof shows otherwise. (*Crest*, 111 Ill. App. 3d 1068, 445 N.E.2d 19; Ill. Ann. Stat., ch. 26, par. 2—313, Uniform Commercial Code Comment, comment 3, at 219 (Smith-Hurd 1963).) In *Crest*, the court noted that the burden was on the manufacturer, defendant, to establish the affirmations contained in a brochure did not become a basis of the bargain.

■ The complaint here did not make any allegation relating to re-

liance or that the warranty was part of the basis of the transaction between Evans Implement and Fesco. Affirmative proof existed at trial which established a warranty was not the basis of the bargain. Plaintiff stated he never saw the instruction-warranty pamphlet prior to the accident. Plaintiff's employer could not remember ever seeing the package insert, did not know if the tool came with the literature, and could not remember precisely when Evans Implement acquired the tool. Plaintiff's complaint failed to state a cause of action for breach of express warranty, and the evidence presented did not cure the defect.

■■ ■ However, plaintiff's complaint did not refer to a specific statutory section. It is the allegations that define the cause of action, and not how plaintiff describes his cause of action. (*Lovgren v. Citizens First National Bank* (1989), 126 Ill. 2d 411, 415.) Under section 2—314 of the UCC, a product must conform to affirmations of fact about it on labels or on the container and be fit for the ordinary purpose for which such goods are used. In an action based upon breach of implied warranty under section 2—314 of the UCC, it is necessary to show the existence of the warranty, its breach, and proximate cause. (Ill. Ann. Stat., ch. 26, par. 2—314, Uniform Commercial Code Comment, comment 13, at 234 (Smith-Hurd 1963).) Implied warranties arise as a matter of law. A description of the product may create an implied warranty of merchantability. (*Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 292 N.E.2d 168.) Plaintiff sufficiently alleged a breach of implied warranty under section 2—314(2)(c) of the UCC.

Plaintiff argues misuse is not an affirmative defense in a products liability action based on breach of warranty. In *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119, 454 N.E.2d 197, 203-04, the court held that equitable principles require total damages for a strict liability plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and plaintiff's conduct proximately caused the injuries. The court held comparative fault principles based upon more than mere negligence were applicable to strict liability actions. The court noted that once a defendant's liability is established and where both the product and plaintiff's misconduct contribute to the cause of the damages, the comparative fault principle will operate to reduce plaintiff's recovery by that amount which the trier of fact finds him at fault. (*Coney*, 97 Ill. 2d at 119, 454 N.E.2d at 204; see also *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1.) The *Coney* court referred to misuse as a "defense," stating it would act to reduce a plaintiff's damages, rather than bar the

action. Since *Coney*, other courts have referred to misuse as a damages-reducing factor which may be raised by defendant. *Simpson*, 108 Ill. 2d 146, 483 N.E.2d 1; *Dukes v. J.I. Case Co.* (1985), 137 Ill. App. 3d 562, 483 N.E.2d 1345.

In drafting proposed jury instructions after *Coney*, the Illinois Supreme Court Committee on Jury Instructions (Committee) stated it believed *Coney* did not intend to change existing law with respect to misuse in products liability actions. Therefore, the use of comparative fault concepts in strict liability did not require any change in jury instructions regarding misuse. Illinois Pattern Jury Instructions, Civil, Introduction to series 400.00, at 400-10 (2d ed. Supp. 1986) (IPI Civil).

The issue of misuse traditionally arises in Illinois in conjunction with plaintiff's duty to prove an unreasonably defective product or proximate causation of the injury. (See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) Prior to *Coney*, misuse was a complete defense to a strict liability action (*Coney*, 97 Ill. 2d at 119, 454 N.E.2d at 203-04), although it was not technically considered an affirmative defense. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70.) However, some courts recognized misuse as an affirmative defense under certain circumstances. *Genteman v. Saunders Archery Co.* (1976), 42 Ill. App. 3d 294, 355 N.E.2d 647.

■■■ Plaintiff argues that if misuse is not an affirmative defense to strict liability, relying on the committee comments, and the UCC does not list it as a defense in warranty actions, it is not an affirmative defense to breach of warranty. An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. (Black's Law Dictionary 55 (5th ed. 1979).) Misuse as an affirmative defense, thus, concedes plaintiff's injuries were in part proximately caused by the defective product or breach of warranty. However, under *Coney*, the defense alleges plaintiff's conduct should act to reduce damages. The *Coney* court's language saying misuse is a defense which may be used to reduce damages after defendant's liability is established is consistent with the reasoning that an affirmative defense must in part concede the viability of plaintiff's allegations. Additionally, *Coney* was addressing the viability of contributory negligence as an affirmative defense to strict liability. The court found mere contributory negligence was not an affirmative defense, but noted misuse could be a defense. *Coney* did not, however, address warranty actions.

■■■ ■ A plaintiff in a breach of warranty action may recover both incidental and consequential damages, including damages for any

personal injury caused by the breach of warranty. (Ill. Rev. Stat. 1987, ch. 26, pars. 2—714(3), 2—715(2)(b).) Plaintiff must establish the injury was proximately caused by the breach of warranty. (Ill. Rev. Stat. 1987, ch. 26, par. 2—715(2)(b).) A plaintiff's conduct, similar to the traditional strict liability analysis, is relevant to consequential damages. (See Ill. Ann. Stat., ch. 26, par. 2—715, Uniform Commercial Code Comments, comment 5, at 588 (Smith-Hurd 1963).) Misuse arises as an issue which may defeat the action in whole or in part by contesting proximate cause. In *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 269-70, 527 N.E.2d 1248, 1258, the court noted the plaintiff's conduct mitigates the damages he may recover. Under section 2—715 of the UCC, a buyer may recover consequential damages which are proximately caused by the breach of warranty. He may not recover for damages caused by his own conduct. Ill. Rev. Stat. 1987, ch. 26, par. 2—715.

In *Blommer Chocolate Co. v. Bongards Creameries, Inc.* (N.D. Ill. 1986), 644 F. Supp. 234, the court found the reasoning of *Coney* was equally applicable to actions based upon breach of express and implied warranty. The *Blommer* court held mere negligence would not be a damages-reducing factor. *Blommer* is consistent with decisions in several other States holding misuse is a damages-reducing factor in warranty actions. (*Duncan v. Cessna Aircraft Co.* (Tex. 1984), 665 S.W.2d 414; *Hiigel v. General Motors Corp.* (1974), 34 Colo. App. 145, 525 P.2d 1198; *Hawkins Construction Co. v. Matthews Co.* (1973), 190 Neb. 546, 209 N.W.2d 643.) In some jurisdictions, misuse is regarded as an affirmative defense. (*Westerman v. Sears, Roebuck & Co.* (5th Cir. 1978), 577 F.2d 873; *Belfry v. Anthony Pools, Inc.* (1977), 80 Mich. App. 118, 262 N.W.2d 909 (implied warranty).) Other jurisdictions agree that misuse arises as a part of plaintiff's proof that he was using the product in a foreseeable manner or that the breach of the warranty proximately caused the injury. (See *Allen v. Chance Manufacturing Co.* (1986), 398 Mass. 32, 494 N.E.2d 1324 (implied warranty); *Guaranteed Construction Co. v. Gold Bond Products* (1986), 153 Mich. App. 385, 395 N.W.2d 332 (implied warranty); *Brickman-Joy Corp. v. National Annealing Box Co.* (2d Cir. 1972), 459 F.2d 133 (implied warranty); *Construction, Inc. v. Unit Crane & Shovel Corp.* (6th Cir. 1970), 428 F.2d 770.) We conclude that misuse is a defense which may be raised as an affirmative matter to reduce plaintiff's damage award in a breach of warranty action.

■■ Plaintiff next argues the evidence did not establish he misused the tool as he used it for its intended purpose. Misuse of a product is use for a purpose neither intended nor foreseeable, not use in a

manner which is neither intended nor foreseeable. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Dukes v. J.I. Case Co.* (1985), 137 Ill. App. 3d 562, 581, 483 N.E.2d 1345, 1358, *aff'd in part sub nom. J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260; *King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 909, 513 N.E.2d 958, 965.) However, a manufacturer is entitled to have its instructions for the use of a product followed by the user. (*Curry v. Louis Allis Co.* (1981), 100 Ill. App. 3d 910, 915, 427 N.E.2d 254, 258.) A failure to follow instructions for the use of an object can be a use which is neither reasonably foreseeable nor intended by the manufacturer. (*Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 384, 428 N.E.2d 190, 193; *Stewart v. The Von Solbrig Hospital, Inc.* (1974), 24 Ill. App. 3d 599, 604, 321 N.E.2d 428, 432; *Watson v. Uniden Corp.* (11th Cir. 1985), 775 F.2d 1514.) In a breach of warranty action, the seller is entitled to have his instructions for use followed. Whether misuse has occurred is ordinarily a jury question. *Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013.

The Chain-A-Part tool in question had two ends. One end was stamped 50/60; the other end was stamped 80. Evidence indicated plaintiff broke size 80 chain (one inch) with the 50/60 (five-eighths- to six-eighths-inch) end of the tool. Plaintiff also testified he did not fully cover the punch with the cylinder prior to breaking the chain pin. Testimony indicated the protective nature of the cylinder was self-evident. Plaintiff, at trial, stated he did not know the purpose of the cylinder but during his deposition stated otherwise. Evidence supported the use of misuse as a defense.

Plaintiff next argues the trial court made several errors in its instructional rulings concerning misuse. Initially, plaintiff contends the trial court erred in allowing defendants' motion to amend their affirmative defenses by specifically stating the alleged misuse of the tool. Plaintiff asserts defendants failed to plead misuse of the tool by breaking size 80 chain with the 50/60 end of the tool. Section 2—613(d) of the Code of Civil Procedure states that facts concerning any defense which, if not expressly stated, would take the opponent by surprise must be set out in the answer or reply. (Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).) Section 2—616(a) of the Code of Civil Procedure provides for liberal amendment of pleadings if the motion to amend is made prior to final judgment. Ill. Rev. Stat. 1987, ch. 110, par. 2—616(a).

In the instant case, defendants filed a misuse affirmative defense

on March 16, 1987. Trial started on October 27, 1987. The affirmative defenses alleged failure to tighten the clamping cylinder and failure to follow the instructions for the use of the tool. Immediately prior to trial, the chain which had been used during the incident was discovered. It was not contested that the 50/60 end of the tool had been used to break the chain, which was size 80. The effect of using the wrong end of the tool was disputed at trial. At the instruction conference, defendants moved to amend their affirmative defense to specifically state that plaintiff had misused the tool by using the 50/60 end to break size 80 chain. The trial court allowed the amendment over plaintiff's objection.

Allowing amendments to pleadings is within the trial court's discretion. (*McCastle v. Mitchell B. Sheinkop, M.D., Ltd.* (1987), 121 Ill. 2d 188, 520 N.E.2d 293.) The decision to permit or refuse the filing of amendments will not be reversed absent a clear abuse of discretion. (*American Pharmaseal v. TEC Systems* (1987), 162 Ill. App. 3d 351, 515 N.E.2d 432.) Factors considered include the timeliness of the motion and prejudice to the opposing party. (*American Pharmaseal,* 162 Ill. App. 3d 351, 515 N.E.2d 432.) However, courts are liberal in allowing amendment of the pleadings to conform to the proof at trial. Plaintiff's argument that misuse was a "new" affirmative defense is misplaced. Defendants had pleaded misuse by failure to follow instructions well prior to trial. At trial, specific information was developed as to precisely how plaintiff had failed to follow the instructions stamped on the tool. In such a case, allowing amendment to clarify the defense and conform to the proof is not an abuse of discretion. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 85, 392 N.E.2d 628, 635-36.

 Plaintiff next argues the trial court erred in instructing on misuse because Fesco never filed the affirmative defense of misuse and Smith Tool and Sunbelt abandoned it. Defendants respond that they did not abandon the defense. Initially, it should be noted that plaintiff's contention as to Fesco is not valid. Plaintiff never filed a warranty claim against Fesco, and Fesco is not a defendant in this appeal. A party may abandon a pleading or defense. The withdrawal of an earlier pleading leaves the issues in the same status as if the abandoned pleading had not been filed. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751.) A party may also abandon an affirmative defense by not pursuing it. (*First Federal Savings & Loan Association v. Chapman* (1983), 116 Ill. App. 3d 950, 452 N.E.2d 600.) Plaintiff maintains defendants abandoned their affirmative defenses when they amended their answers on the day of trial but did not refile their

affirmative defenses. The record in the instant case shows defendants did not abandon their affirmative defenses.

 Plaintiff next argues the trial court erred in failing to *sua sponte* instruct the jury on the definition of the term "misuse." Plaintiff notes the term was used in eight instructions and was a technical one. Plaintiff tendered an instruction combining a definition of misuse with a paragraph telling the jury the effect of misuse. The trial court refused to give the instruction. Plaintiff does not argue the trial court erred in refusing his instruction as offered. Plaintiff argues misuse is a technical term which must be defined for the jury.

The trial court correctly refused to give plaintiff's instruction. Non-IPI instructions should be brief, impartial, and free from argument. (107 Ill. 2d R. 239(a); *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 502 N.E.2d 480; *Zieger v. Manhattan Coffee Co.* (1983), 112 Ill. App. 3d 518, 532-33, 445 N.E.2d 844, 855.) Although the first sentence of plaintiff's instruction followed the language of *Williams* and *Dukes* and was a correct statement of the law, the latter paragraph mixed issues instructions with a definition and was phrased in an argumentative fashion. Since the second half told the jury the effect of foreseeable misuse, it argued plaintiff's case. (*Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793; *Zieger*, 112 Ill. App. 3d 518, 445 N.E.2d 844.) A party may not complain that the trial court failed to tender a jury instruction as to a particular aspect of the case if the party failed to tender a proper instruction. (*West Chicago State Bank v. Rogers* (1987), 162 Ill. App. 3d 838, 515 N.E.2d 1261.) Plaintiff did not amend his instruction or offer a new definitional instruction and may not argue error occurred in failing to give such an instruction.

 Plaintiff next argues the trial court violated section 2—1109 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1109) when it gave a form of the verdict which did not differentiate between economic and noneconomic loss. The court refused plaintiff's verdict form, which did differentiate between economic and noneconomic loss. Section 2—1109 of the Code of Civil Procedure states itemized verdict forms shall be given to the jury in personal injury actions. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1109.) In *Henderson v. Hudson* (1984), 121 Ill. App. 3d 780, 785, 460 N.E.2d 10, 13, the trial court held the statute was mandatory. It noted the legislative history supported a finding that the word "shall" be interpreted as mandatory. In the instant case, plaintiff does not argue that the damages award was insufficient. The trial court correctly refused plaintiff's verdict forms and instruction. The complaint contained two counts

and three defendants. The verdict forms did not provide for separate verdicts on each count, did not allow for different findings among the defendants, and did not provide for a comparison of plaintiff's conduct as a damages-reducing factor.

Verdicts should cover all possible findings by the jury. (*In re Estate of Payton* (1979), 79 Ill. App. 3d 732, 739, 398 N.E.2d 977, 982.) Plaintiff did not offer amended verdict forms to correct the defect. Failing to tender a proper itemized verdict to the trial court waives review of the issue. *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 449 N.E.2d 250.

■ Plaintiff next argues the trial court abused its discretion in limiting his examination of a witness to show bias. Plaintiff maintains examination of Smith was necessary to show the nature and extent of his interest in the litigation. Plaintiff called Lloyd Smith as an adverse witness. Smith had incorporated Sunbelt and was its chief executive officer. Smith had also been chief executive officer of S/V Tool. Smith Tool bought Sunbelt's interests, and Smith became the chief executive officer of Smith Tool. Center Industries, dismissed from the cause, bought Lloyd Smith's shares in Smith Tool. Smith testified Center Industries paid him a percentage of the gross sales price for all tools sold, as a method of purchasing his shares. The trial court sustained defendants' objection to a question concerning how much money this amounted to on a monthly basis.

A witness may properly be questioned to establish his interest, bias, or motive to testify falsely. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 477-78, 473 N.E.2d 1322, 1337.) A witness' financial interest in a litigation is a proper subject for questioning. (*DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 682-83, 491 N.E.2d 13, 19.) Limitation of the scope of such questioning is within the trial court's discretion. Its discretion will only be reversed where a clear abuse is shown. (*Lebrecht*, 130 Ill. App. 3d 457, 473 N.E.2d 1322.) No abuse of discretion occurred in limiting examination on bias in the instant case.

■ Plaintiff next argues the trial court erred in failing to admit into evidence a list of allegations admitted by Smith Tool in its answer. In count III of plaintiff's amended complaint, plaintiff alleged: (1) plaintiff was using the tool to take apart a combine chain; (2) while plaintiff was using the tool, the 50/60 end of it fractured; and (3) a piece of the punch entered plaintiff's eye. Smith Tool filed an answer neither admitting nor denying the allegations. However, an affidavit in compliance with section 2—610(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—610(b)) was not attached to the

answer. On the day of trial, plaintiff moved for admission of the assertions contained in the allegations. The trial court denied plaintiff's motion and granted defendant leave to file an amended answer, in which it denied the allegations. Section 2—610(b) of the Code of Civil Procedure provides that an allegation of a complaint, except as to damages, which is not explicitly denied is admitted unless the party states. he has insufficient knowledge to admit or deny the allegation and attaches an affidavit so stating his lack of knowledge. (Ill. Rev. Stat. 1987, ch. 110, par. 2—610(b).) When a fact has been admitted in a pleading, it is a judicial admission. The opposing party need not present evidence in support of the issue. *DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 491 N.E.2d 13.

However, it is within the discretion of the trial court to permit amendment to pleadings at any time before judgment. The decision of the trial court will not be reversed absent an abuse of discretion. (*McCastle*, 121 Ill. 2d 188, 520 N.E.2d 293; *American Pharmaseal*, 162 Ill. App. 3d 351, 515 N.E.2d 432.) The test as to whether that discretion has been properly exercised is whether the amendment furthers the ends of justice.

In the instant case, the other defendants did not admit the facts stated in the complaint. Plaintiff would have had to prove up his allegations as to those defendants. The motion to amend was made during trial, and under the facts presented here, allowing the amendment did not prejudice the plaintiff. No abuse of discretion occurred.

Next, plaintiff argues the trial court should have granted him judgment as a matter of law on count VII, which alleged violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, pars. 261 through 272) and violations of the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (Ill. Rev. Stat. 1987, ch. 121½, pars. 311 through 317). The trial court found in defendants' favor as to the allegations concerning a violation of the Consumer Fraud Act. He noted plaintiff had not established the misrepresentation as to the punch was a proximate cause of his injury. The court noted no one saw the promise prior to the injury and in the trial judge's opinion, the evidence did not indicate anything different would have occurred had the representation not been made. The trial court further noted plaintiff's conduct in using the tool was a factor in his decision. The court held the Deceptive Practices Act did not apply.

Plaintiff refers to *Pedrick* and argues judgment notwithstanding the verdict should be entered as all of the evidence is in his favor. The more correct question on appeal is whether the trial court's verdict is

contrary to the manifest weight of the evidence. In count VII, plaintiff alleged Smith Tool and Sunbelt were engaged in the manufacture, sale, or distribution of the tool, which could be used to take apart chains on agricultural equipment. Plaintiff further alleged the tool contained a punch, which defendants represented would not break. Plaintiff alleged the punch broke, a piece entered his left eye, and he lost the sight of his left eye. Defendants admitted the factual allegations of the complaint except that a piece of the punch entered plaintiff's eye. They denied knowledge of the falsity of the representation and denied a violation of the statutes.

 ██ In order to establish a violation of the Consumer Fraud Act, plaintiff must show: (1) a deceptive act or practice; (2) an intent by defendants that plaintiff rely on the deception; and (3) the deception must have occurred in the course of conduct involving a trade or commerce. (*Crowder v. Bob Oberling Enterprises, Inc.* (1986), 148 Ill. App. 3d 313, 316, 499 N.E.2d 115, 117.) In order to recover individual damages, plaintiff must show his injury proximately resulted from the violation. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.) In the instant case, the trial judge stated the question of plaintiff's conduct concerned him. He did not believe the misrepresentation caused the injury. The trial court's determination that plaintiff had not established proximate causation of his injury is supported by the evidence.

 The Deceptive Practices Act (Ill. Rev. Stat. 1987, ch. 121½, pars. 311 through 317) does not provide for individual damages for an injury. It provides for the granting of injunctive relief. (Ill. Rev. Stat. 1987, ch. 121½, par. 313.) Plaintiff requested individual damages for his injury. The trial court's finding that the Deceptive Practices Act did not directly apply appears correct. An individual plaintiff may recover damages for violations of the Deceptive Practices Act because they are incorporated into the Consumer Fraud Act. (See Ill. Rev. Stat. 1987, ch. 121½, par. 262; *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433.) Since plaintiff could only recover individual damages pursuant to the Consumer Fraud Act, the trial court correctly determined that the Deceptive Practices Act *per se* did not apply.

 Plaintiff next argues the trial court erred in holding a bench trial on count VII contrary to his request for a jury trial. Plaintiff contends that since he incorporated a Deceptive Practices Act violation into a Consumer Fraud Act claim, he is entitled to a jury trial on the issues. Plaintiff does not contend he would be entitled to a jury trial under the Consumer Fraud Act alone.

In *Richard/Allen/Winter, Ltd. v. Waldorf* (1987), 156 Ill. App. 3d 717, 509 N.E.2d 1078, the court noted the Consumer Fraud Act provided a new cause of action which was unknown at common law. The court analyzed the language of the Consumer Fraud Act, its legislative history, and cases decided pursuant to it. It held no jury trial is available to plaintiffs seeking damages under the Act. All of the courts which have addressed the issue agree that the Consumer Fraud Act provides broader protection for a consumer than common law fraud. It also establishes a new action based upon innocent misrepresentation. (See generally *Waldorf*, 156 Ill. App. 3d 717, 509 N.E.2d 1078; *First Security Bank v. Bachleda* (1987), 165 Ill. App. 3d 725, 731, 520 N.E.2d 660, 664; *People ex rel. Fahner v. American Buyers Club, Inc.* (1983), 115 Ill. App. 3d 759, 761, 450 N.E.2d 904, 906.) Section 10a of the Consumer Fraud Act states the "court" may award damages. (Ill. Rev. Stat. 1987, ch. 121½, par. 270a.) The trial court did not err in determining plaintiff was not entitled to a jury trial on count VII.

The Deceptive Practices Act (Ill. Rev. Stat. 1987, ch. 121½, pars. 311 through 317) does codify some common law actions for unfair competition. (*Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 274, 361 N.E.2d 815, 821.) However, no individual damages are available under that act. Individual damages are only available inasmuch as the Deceptive Practices Act is incorporated into the Consumer Fraud Act. Since this is so, a plaintiff would not have a right to a jury trial on his individual damages claim pursuant to the Consumer Fraud Act.

Defendants argue in the alternative that the trial court erred in denying their special interrogatory. In light of our disposition, we need not address this issue.

For the above reasons, we affirm the trial court.

Affirmed.

SPITZ and GREEN, JJ., concur.