2023 IL App (1st) 211425-U

No. 1-21-1425

Order filed June 12, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF FOUAD TEYMOUR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 D 11762 |
| | ) | |
| HALA MOSTAFA, | ) | The Honorable |
| | ) | Mark Lopez & Dominique Ross, |
| Respondent-Appellee. | ) | Judges Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court properly interpreted the parties' marital settlement agreement and continued spousal maintenance. In addition, the court appropriately sanctioned the petitioner and awarded the respondent attorney fees. The court erred, however, by holding the petitioner in indirect civil contempt.

¶ 2    This appeal involves 15 years of post-dissolution grievances between petitioner Fouad

Teymour (ex-husband) and respondent Hala Mostafa (ex-wife). On appeal, Fouad asserts that the

trial court erroneously interpreted the parties' marital settlement agreement (MSA), continued his

maintenance payments to Hala, imposed sanctions against him under Illinois Supreme Court Rule 219 (eff. July 1, 2002), held him in indirect civil contempt and awarded Hala attorney fees under section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508 (West 2020)). For the following reasons, we reverse the court's contempt finding but affirm the judgment in all other respects.

¶ 3                                        I. Background

¶ 4     The parties were married in Egypt in 1982 and had two children. Fouad worked full time as a professor of chemical engineering at the Illinois Institute of Technology. Although Hala had obtained her bachelor's degree in accounting in Egypt, she was a homemaker. In 2006, the parties' 23-year marriage was dissolved. The dissolution judgment incorporated an MSA containing provisions for Fouad's maintenance payments, Hala's efforts to increase her income and Fouad's insurance obligations.

¶ 5     In 2013, Hala filed a petition to extend and increase maintenance and to issue a rule to show cause why Fouad should not be held in contempt for failing to comply with his insurance obligations. She also sought attorney fees and costs. Fouad, however, sought the abatement or reduction of maintenance.

¶ 6     In 2014, both parties filed motions for discovery sanctions regarding the others' alleged failure to comply with discovery requests involving their property located in Egypt. On September 23, 2014, the trial court entered a written order stating, "Both motions are entered and continued *** to be addressed as part of the case in chief and ruled upon at the close of evidence as to whether sanctions should be ordered."

¶ 7     A three-day trial before Judge Mark Lopez began in October 2014, was continued to December 2014, and ended in March 2015. The parties testified regarding matters such as

discovery, the MSA, the extent of their property in Egypt and Fouad's efforts to obtain life and disability insurance. The parties also testified regarding their expenses, Hala's employment efforts and Fouad's income and health problems. Additionally, the parties presented the reports of two vocational experts, who opined on Hala's employment prospects.

¶ 8    On June 12, 2015, the trial court determined that Fouad's maintenance obligation of $5,000.00 per month would continue until June 12, 2018, and denied his motion to abate or reduce maintenance as well as Hala's motion to increase maintenance. The court found that under the MSA, Fouad's maintenance payments could not be terminated unless Hala earned more than $50,000. In 2014, however, she had earned only $28,000 through her fulltime employment at Von Maur and part time work preparing taxes for H&R Block. The court also found that Hala had made a good faith attempt to increase her income, but she confronted several hurdles in finding work as an accountant, including her age, her lack of actual accounting experience, her lack of computer skills and her need to sit for the CPA exam. The court further noted that Arabic, rather than English, was her first language.

¶ 9    The trial court then found Fouad to be in indirect civil contempt with respect to his insurance obligations and granted Hala leave to file a petition for attorney fees under section 508(b) of the Act (750 ILCS 5/508(b) (West 2014)). Specifically, the MSA required Fouad to provide Hala with a copy of his life insurance and disability insurance policies within 30 days of the MSA's effective date, but he had not done so. The court found no justification or good cause for his noncompliance.

¶ 10    The trial court also granted Hala's motion for sanctions under Rule 219 due to Fouad's untimely and incomplete responses to discovery requests concerning his property in Egypt. He failed to provide statements for his Egyptian checking accounts, despite their availability to him,

and to provide documentation regarding his farmland and vacant multiuse property. In addition, he failed to account for his current holdings, their value and the proceeds of land sales. The court found that Fouad "did not want the Court or his ex-wife to know the current value and extent of his non-marital assets." As a result, it was appropriate for Fouad to pay for the legal services Hala required to seek his compliance with discovery.

¶ 11    In contrast, the court found Hala testified credibly that she had not inherited property from her mother's estate in Egypt, had no present interest in her father's home there and had no further documents to tender in that regard. "Any interest Hala might have is contingent on there being an asset remaining when her father passes."

¶ 12    In July 2015, Hala filed a petition for attorney fees under section 508(b) with respect to Fouad's failure to comply with the MSA's insurance obligations. She also sought fees under section 508(a) of the Act, arguing that while Fouad had the financial resources to pay her fees, she did not. Hala would later file an additional petition for contribution to fees and costs in August 2020.

¶ 13    Meanwhile, in July 2015, Fouad filed a motion to reconsider, raising several challenges to the trial court's June 2015 judgment. In particular, he raised the election of remedies doctrine for the first time. Specifically, the MSA stated that if Fouad failed to obtain the requisite disability policy, he could not seek the modification of maintenance due to a disability. Fouad argued that this provision foreclosed any other remedy for his noncompliance.

¶ 14    On March 21, 2016, the trial court denied Fouad's motion to reconsider, with certain exceptions not pertinent here. The court stated, "Fouad impressed this Court as someone who had no further use for his ex-wife and believes his financial obligation to her should simply end simply because he does not want to be financially burdened with her anymore and his belief that

she should be able to be financially self-sufficient to maintain the lifestyle the parties enjoyed during the marriage." The court found Fouad had ignored most of the statutory considerations relevant to maintenance and had minimized Hala's years of contribution to the marriage and to Fouad. We note that the court had further observed at the hearing on Fouad's motion to reconsider that he failed to raise the election of remedies doctrine prior to filing this motion.[1]

¶ 15    In 2018, Hala filed a second petition to review and extend maintenance. In addition, Fouad asked the court to modify his life insurance obligation. A four-day trial subsequently ensued before Judge Dominique Ross between August 2020 and January 2021.

¶ 16    During those proceedings, the parties testified regarding matters that were at issue in the prior trial. Hala also testified regarding her father's death and its impact on any interest she held in the property that Fouad alleged she owned in Egypt. Essentially, Hala testified that under Egyptian law, if a person died without a son, part of his estate would be received by the decedent's siblings as well as the siblings' own children. To avoid that outcome, in 1992, Hala, her sisters and her parents entered into a sales contract. Hala and her sisters accepted their parents' property subject to their life estate. Then Hala's mother died in 2011, leaving medical expenses behind. Hala's father subsequently incurred his own medical and nursing home expenses. In 2015, her father sold the property for approximately $8 million in Egyptian currency or approximately $867,000 in U.S. currency. The proceeds were largely used to cover the aforementioned expenses and related debt as well as a significant payment to the property's tenant so that he would consent to the sale. Her father died in 2017, and the remaining proceeds were donated in accordance with her parents' wishes. Hala explained that due to the 1992

---

[1] On April 18, 2016, Fouad filed a notice of appeal, which we later dismissed for lack of jurisdiction, as other matters were still pending before the trial court. *In re Marriage of Teymour*, 2017 IL App (1st) 161091.

contract, she had to be included as a signatory to the 2015 contract. She did not, however, receive any of the sale proceeds.

¶ 17     On April 7, 2021, the trial court granted Hala's request to continue maintenance for 36 months but denied her request for indefinite maintenance. Once again, the court concluded that Hala's maintenance could not be modified unless she earned more than $50,000 and, to date, she had not done so. The court rejected Fouad's assertion that the $50,000 threshold applied only to the initial seven-year period following the parties' divorce.

¶ 18     The trial court found that while Hala had obtained her master's degree in accountancy from Elmhurst College in 2009, she had "made less than a good faith effort to utilize her [m]aster's degree to become self-supporting." The court found that Hala was voluntarily underemployed, but also recognized certain challenges to her finding work as an accountant. In addition, Hala earned approximately $28,000 per year working full time at Von Maur and "[s]ince the entry of Judgment Hala has made good faith efforts to increase her annual income in order to support herself." Although Hala had improved her financial position since the dissolution of the parties' marriage, the decrease in her expenses and increase in her income was "not so significant that she is self-supporting or that her income affords her the lifestyle that she enjoyed during a 23 year plus marriage while foregoing her own career to be a homemaker and raise children." Furthermore, the court recognized that Fouad's expenses had increased but declined to indulge his speculation that his income would likely decrease in the next two to three years. The court did, however, reduce Fouad's life insurance obligation. Finally, the court found Hala had testified credibly that the proceeds from the sale of her father's home were used for specific purposes and that she had received nothing.

¶ 19    The trial court subsequently ordered Fouad to pay Hala approximately $25,000 in attorney fees under section 508(a) of the Act after considering "the parties' respective financial circumstances and abilities to pay." The court awarded Hala an additional $31,500 under section 508(b).

¶ 20                                    II. Analysis

¶ 21    Initially, we observe that Fouad's opening brief contains several violations of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). He sets forth facts without citing the page of the record relied on and cites volumes of the record that do not correspond to the electronic record filed on appeal. In addition, he repeatedly fails to provide pinpoint citations with respect to the cases relied on and sets forth legal principles without citing supporting legal authority. At times, his arguments are incohesive. Illinois Supreme Court Rule 341(h)(7) (Oct. 1, 2020).

¶ 22    The appellate court is not a depository into which an appellant may dump the burden of research and argument. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. The consequences of failing to comply with Rule 341 include striking portions of the brief and forfeiture. *Id.* ¶ 6. While we decline to take either of those actions in this instance, we strongly urge Fouad to take greater care to comply with our supreme court's rules in any future filings.

¶ 23                      A. The MSA's Maintenance Requirement

¶ 24    On appeal, Fouad first asserts that the trial court erroneously determined that the MSA prevented the modification of Hala's maintenance because her annual income was not more than $50,000.

¶ 25    An MSA is construed like any other contract: courts must determine the parties' intent from its language. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009); see also *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 714 (2005) (recognizing that language is not ambiguous

7

merely because the parties disagree as to its meaning). In addition, an MSA's terms must be accorded their plain, ordinary meaning. *Id.* at 711. We review the interpretation of an MSA *de novo*. *Blum*, 235 Ill. 2d at 33.

¶ 26     First, paragraph 2.02 of the MSA governed "Maintenance for Hala."

> " FOUAD shall pay to HALA the sum of $5,000.00 per month for maintenance on or before the 15th day of every month. FOUAD'S obligation to pay maintenance to HALA shall continue for *at least* seven (7) consecutive years (84 months) commencing May 15, 2006, *as more specifically set forth at paragraph 2.03.*" (Emphases added.)

This paragraph further stated that Fouad's obligation would "terminate" sooner upon the occurrence of certain events not relevant here.

¶ 27     Thus, paragraph 2.02 sets forth Fouad's obligation to pay Hala maintenance for a period yet to be determined. While Fouad argues that paragraph 2.02 refers to an initial 84-month period, he ignores that this paragraph refers to a period of "at least" 84 months. Stated differently, 84 months was the floor, not the ceiling.

¶ 28     Paragraph 2.02 also incorporated paragraph 2.03, which governed the "Reviewability of Maintenance."

> "If HALA has not filed a Petition to extend her right to receive maintenance from FOUAD prior to the 84-month anniversary of the effective date of this Agreement, then her right to receive maintenance shall terminate. If HALA does file a Petition to extend her right to receive maintenance, the court shall consider all relevant statutory factors, as provided in the Illinois Marriage and Dissolution of Marriage Act. Provided that FOUAD complies with the terms of this Agreement, *HALA has an affirmative obligation to pursue*

*training in order to increase her annual income by seeking full-time employment.* Unless otherwise ordered by the court, FOUAD'S obligation to pay HALA $5,000.00 per month for maintenance shall continue beyond 84 months during the pendency of the proceedings by which the court will review HALA's right to receive continued maintenance. *HALA's income will not be a factor in connection with reducing or modifying FOUAD's obligation under paragraph 2.02 unless her gross annual income from employment exceeds $50,000.00."* (Emphases added.)

¶ 29    This language unequivocally prohibited the use of Hala's income as a factor to reduce Fouad's maintenance payments unless Hala earned more than $50,000 annually. Considering paragraphs 2.02 and 2.03 together, we find the trial court properly determined that the $50,000 threshold was not limited to the first 84 months after the dissolution of marriage. Instead, this threshold amount applied to *at least* the first 84 months or however long Hala was receiving maintenance.

¶ 30    Fouad nonetheless argues that the maintenance contemplated by the MSA was rehabilitative and the $50,000 threshold was intended to apply only to the first 84 months as a means to encourage Hala to increase her income without risk of maintenance modification for that initial period.

¶ 31    Rehabilitative maintenance offers a spouse the opportunity to become self-sufficient following a divorce. *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 35; *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 303 (2005). In addition, a spouse receiving maintenance has an obligation to make a good faith effort toward self-sufficiency. *In re Marriage of Haas*, 215 Ill. App. 3d 959, 964 (1991). Neither paragraph 2.02 nor paragraph 2.03, however, expressly limit the $50,000 threshold to the first 84-month period. We cannot add language to the MSA that the

parties could have easily added themselves. Furthermore, the record does not otherwise show that this was the parties' intent. Rather, the parties may have intended to encourage Hala's pursuit of financial independence while at the same time recognizing that even additional training might not lead her to earn the minimal amount of income necessary to sustain her. *Cf. Blum*, 235 Ill. 2d at 25, 33-35 (finding that maintenance was intended to be rehabilitative where the MSA called for maintenance review after 61 months and required the recipient spouse to make reasonable efforts toward self-sufficiency, but did not set a minimum income amount for her before maintenance would be modified).

¶ 32    Moreover, Fouad's argument relying on the distinction between review proceedings and proceedings to modify or terminate maintenance is unclear at best. *Marzouki v. Najar-Marzouki*, 2014 IL App (1st) 132841, ¶ 12 (stating that a reviewing court is entitled to clearly defined issues supported by pertinent authority and cohesive argument).

¶ 33    Courts have recognized a distinction between (1) maintenance proceedings pursuant to a court order providing for review, otherwise referred to as a review hearing, and (2) modification or termination proceedings that occur without a court order authorizing review, otherwise referred to as a modification hearing. *In re Marriage of Golden*, 358 Ill. App. 3d 464, 468-69 (2005). Confusingly, even in a review hearing, the trial court has the discretion to continue maintenance, modify it, change payment terms or terminate maintenance. *Blum*, 235 Ill. 2d at 36. The two types of proceedings differ, however: a party seeking a change in a review hearing does not have the burden of showing a substantial change in circumstances whereas the petitioning party in a modification hearing does. *In re Marriage of Golden*, 358 Ill. App. 3d at 471-72.

¶ 34    Here, Fouad has not developed any argument clearly explaining why the difference between the two burdens compels a different interpretation of the MSA. We also note that in

denying Fouad's motion to reconsider, the trial court expressly acknowledged that it was solely Hala's burden to show she was entitled to continued maintenance. *Blum*, 235 Ill. 2d at 35-36 (recognizing that where the MSA agreed to a general review of maintenance, there was no need to prove a substantial change in circumstances). We find no error.

¶ 35 Finally, Fouad argues that if the only question was whether Hala earned more than $50,000 annually, there would have been no need for a three-day trial in 2014 to 2015, followed by a four-day trial in 2020. We find this argument to be disingenuous, as Fouad is well aware that maintenance was not the only subject at issue in those trials. In any event, he has not explained why this argument matters given our *de novo* interpretation of the MSA. Accordingly, the trial court properly determined that the $50,000 threshold was not limited to the first 48 months of maintenance.

¶ 36                                   B.  Continuing Maintenance

¶ 37 Next, Fouad asserts that the parties' circumstances did not otherwise justify the continuance of Hala's maintenance. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 34 (reviewing factual findings under the manifest weight of the evidence standard); *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 29 (reviewing the court's ultimate maintenance determination under the abuse of discretion standard).

¶ 38 In reviewing maintenance, the trial court must consider the factors listed in sections 504(a) and 510(a-5) of the Act to determine whether maintenance should be continued, modified or terminated. *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 24. Those factors include each party's income, needs, education, employment and earning capacity, as well as the parties' standard of living during marriage, the time necessary to obtain appropriate training, the age of the parties and any agreement between the parties. *In re Marriage of Brankin*, 2012 IL App (2d)

110203, ¶ 9. While the failure to make good-faith efforts toward financial independence might justify reducing maintenance, the goal of financial independence must be balanced against the realistic likelihood that the spouse would be able to support herself in a reasonable approximation of the standard of living established during the marriage. *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 958 (1992).

¶ 39    Here, the trial court's findings were not against the manifest weight of the evidence and the decision to continue maintenance was not an abuse of discretion.

¶ 40    Hala's annual income was only $28,000, albeit an increase from her $7,000 income at the time of the divorce. Fouad points out that the children no longer live at home and Hala no longer had to make mortgage or car payments, ignoring that her car was 10 years old. Consistent with Fouad's observations, the trial court found that Hala's monthly expenses had decreased, and her income had increased. The court also found, however, that those changes were not significant enough to render her self-supporting in the lifestyle she enjoyed during the parties' marriage of over 23 years, during which she had put aside her own career during the marriage in order to be a homemaker. *Cf. In re Marriage of Haas*, 215 Ill. App. 3d at 964-65 (finding permanent maintenance to be inappropriate where the recipient was employed throughout the marriage, seemingly had all the education and training she needed, and had the potential to become self-sufficient).

¶ 41    The record also supports the court's finding that Hala made a good effort to increase her income but that significant hurdles stood in her way, including her age, limitations on her ability to read English and her lack of actual accounting experience. Hala applied to three or four bank teller jobs in the last six years but did not receive any interviews or job offers. In addition, she failed the CPA exam and did not retake it because she is unfamiliar with computer accounting

programs. Furthermore, the trial court found it was unreasonable to expect Hala to work as a part time/freelance tax preparer in addition to her fulltime position at Von Maur.

¶ 42    To be sure, Judge Ross found that "Hala has made less than a good faith effort *to utilize her [m]aster's degree* to become self-supporting and [was] voluntarily underemployed" (emphasis added). The record shows that Hala did not take steps to familiarize herself with accounting computer programs, citing struggles with technology, and did not work with a recruiter to find a higher paying job commensurate with her education. In addition, she did not take a CPA preparation course and waited until 2018, nine years after obtaining her master's degree, to take that exam. Yet, these omissions do not undermine the finding of both Judge Lopez and Judge Ross that on the whole, Hala made a good faith effort to improve her income.

¶ 43    Fouad argues that his vocational expert believed Hala could be earning between $45,000 and $60,000 per year, instead of the $28,000 she earned at Von Maur. Yet, the trial court was not required to find that opinion to be credible. Indeed, Judge Lopez had also accepted the opinion of Hala's vocational expert over Fouad's expert, finding that the former's opinion was "based on a more complete set of facts and less speculation then Ms. Gordon's report." *Cf. Blum*, 235 Ill. 2d at 41 (upholding the reduction of maintenance where the recipient spouse made minimal efforts toward financial independence for a two-year period, favoring jewelry making over the practice of law, but had returned to the practice of law and improved her future earning capacity); *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶¶ 30, 36-37 (upholding the finding that spouse did not act in good faith to obtain appropriate employment where (1) she held a master's degree; (2) had been employed in a practice group prior to litigation; and (3) the parties' vocational experts both concluded she was qualified to take the LCSW exam and could find employment as a licensed social worker).

¶ 44    Fouad further argues that he was in a somewhat worse financial position than he had been at the time of the divorce. In 2019, his income was $167,461, but 10% of that sum represented an administrative component that was not guaranteed every year and would end following the 2020-2021 academic year. In addition, Fouad identified several medical problems, including diabetes, sleep apnea, atrial fibrillation, reflux disease and other gastrointestinal problems. He explained that as a result, he intended to retire within the next two or three years. As the trial court found, however, those concerns had not yet impacted his income, which was still substantially higher than Hala's income. Furthermore, the trial court agreed that Fouad's expenses had increased. For example, he paid $98,801.43 for the children's college expenses. He also needed $10,000 in dental work, although said work had not yet been scheduled or invoiced to him. Still, considering the parties' circumstances as a whole, we cannot say Fouad's increased expenses were so drastic as to compel the reduction of Hala's maintenance. We find no abuse of discretion. [2]

¶ 45                                    C. Sanctions

¶ 46    Next, Fouad asserts that the trial court improperly sanctioned him under Illinois Supreme Court Rule 219(c) (July 1, 2002) with respect to his failure to produce information and documents pertaining to his property in Egypt. We review the trial court's discovery sanction for an abuse of discretion. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998).

¶ 47    Discovery is intended to enhance the truth-seeking process. *King v. American Food Equipment Co.*, 160 Ill. App. 3d 898, 910 (1987). Thus, good-faith compliance with discovery rules is desirable and necessary. *Id*. Judgments are meant to rest on the merits of the cause of

---

[2] The trial court correctly observed that section 504(b-1) of the Act states that "[f]or a marriage of 20 or more years, the court, in its discretion, shall order maintenance for a period equal to the length of the marriage or for an indefinite term." 750 ILCS 5/504(b-1 (West 2020). The parties have not addressed the impact of this provision.

action rather than the maneuvering of counsel. *Id.* To that end, Illinois Supreme Court Rule 213 states that a party must serve an answer to an interrogatory within 28 days and that "[a] party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party." Ill. S. Ct. R. 213(d), (e) (eff. Jan. 1, 2007). In addition, Rule 214, which governs requests to produce documents and other items, permits the discovery of evidence in the possession or control of a party. *Petrik v. Monarch Printing Corp.*, 150 Ill. App. 3d 248, 258 (1986). Committee comments to the rule further state that "[a] party who has knowledge of documents, objects or tangible things responsive to a previously served request must disclose that information to the requesting party whether or not the actual documents, objects or tangible things are in the possession of the responding party." Ill. S. Ct. R. 214, Committee Comments (revised June 1, 1981).

¶ 48     Moreover, Rule 219(c) states that "[i]f a party *** unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Sanctions are intended to coerce compliance with discovery orders rather than punish a party, but when it becomes apparent that a party will not comply with discovery, the court must determine a fair method of completing the case. *In re Marriage of Barnett*, 344 Ill. App. 3d 1150, 1153 (2003). The court may, among other things, bar the offending party from testifying concerning a given issue or strike his pleadings. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). "In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party *** the amount of

15

reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Thus, Rule 219 specifically envisions a sanction of reasonable attorney fees and expenses. *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 387 (2010). In determining what sanction, if any, is appropriate, courts consider several factors including the surprise to the adverse party, the prejudicial effect of the proffered evidence and the good faith of the party offering evidence. *In re Marriage of Daebel*, 404 Ill. App. 3d 473, 487 (2010).

¶ 49     Here, as a sanction for failure to comply with reasonable discovery requests, the trial court ordered Fouad to pay the legal fees Hala incurred in seeking to compliance. The court found Fouad's testimony showed that he understood his ongoing obligation to provide full answers to questions and comply with requests for documents. Yet, Fouad did not answer, or only partially answered, questions presented in discovery with respect to his property in Egypt. More specifically, the court found Fouad did not disclose his Egyptian checking accounts or produce corresponding bank statements, which were available to him at all times. Fouad also failed to tender complete answers and documents to account for his present real estate holding, its value and the net proceeds of real estate he had sold, notwithstanding that such information was available at all times. After considering the record in its entirety, the court found that Fouad failed to do so because "he did not want the Court or his ex-wife to know the current value and extent of his non-marital assets."

¶ 50     The trial court's findings are supported by the record. For example, Fouad testified that Hala requested bank statements and records regarding the transfer of any real or personal property from April 2006 onward. He acknowledged that he was supposed to update his document production and answers to interrogatories from time to time but had not done so. He

admitted that he could have requested more statements from his Egyptian bank. In addition, Fouad acknowledged that he could have requested records regarding his sale of land from the registry that maintained them, but he did not do so. In short, we are not persuaded by Fouad's conclusory argument that he "submitted a complete status report of his property and testified consistently with the documents."

¶ 51    Fouad argues that the court's sanctions ruling was unreasonable because Hala also withheld information regarding real estate that she owned in Egypt. He disregards, however, that Judge Lopez found Hala testified credibly that she did not inherit any property from her mother's estate in Egypt and that the 1992 contract gave her no present interest in that property. We also note that Judge Ross later found Hala testified credibly that the real estate was sold during her father's lifetime and that she received none of the proceedings from the sale. Moreover, Fouad has not developed a cohesive argument setting forth any reason to set aside the court's findings.

¶ 52    We further reject Fouad's procedural challenge to the court's ruling. Specifically, Fouad argues that sanctions were improper because the court did not address Hala's motion for sanctions on September 23, 2014, the date originally scheduled for the hearing, but instead deferred ruling on the motion until the conclusion of trial. Fouad, however, has not satisfied his burden of providing a report of proceedings from that date. *Nunez v. C&C Investments of Chicago, LLC*, 2022 IL App (1st) 211423, ¶ 33. In its absence, we must presume the trial court's reasons for continuing Hala's motion were appropriate. *Northwest Illinois Area Agency on Aging v. Basta*, 2023 IL App (1st) 210234, ¶ 79; see also *Gilmore v. City of Zion*, 237 Ill. App. 3d 744, 753-54 (1992) (upholding the trial court's continuance of the City's motion to compel discovery pending ruling on a motion to dismiss where neither the City's discovery nor the transcript of the

hearing continuing the matter was included in the record on appeal). Aside from the deficient record, Fouad has not otherwise shown that error occurred.

¶ 53    Fouad argues that the deferred ruling was improper because it undermined Rule 219(c)'s purpose of encouraging discovery compliance. Yet, Rule 219(c) also authorizes the court to penalize a party for the willful violation of discovery rules (*New*, 398 Ill. App. 3d at 387), and the record contains ample support for the conclusion that Fouad's noncompliance was willful. We also observe that this sanction may encourage Fouad to comply with our supreme court's discovery rules in any further litigation.

¶ 54    The deferred ruling did not prejudice Fouad either. He knew that Hala had tendered him discovery regarding his property in Egypt and that discovery rules required him to comply. Nothing further was required to make his obligations clear. In addition, he had the opportunity at trial to explain why he had not tendered those items and the court's sanction did not deprive him of the opportunity to present evidence on the merits of the parties' claims. *Cf. In re Marriage of Booher*, 313 Ill. App. 3d at 357-58, 360-61 (finding the trial court improperly precluded the *pro se* spouse from presenting evidence as a sanction for failing to file a pretrial affidavit where (1) the court clerk, instead of giving him a form, told him to discuss the affidavit on the day of trial; (2) he was greatly prejudiced by the court's order; (3) his wife suffered no surprise; (4) she had failed to file her own affidavit on time; and (5) she sought the sanction on the day of the hearing without allowing the husband time to comply with the order). Accordingly, we find no reason to disturb the award of sanctions.

¶ 55                                D. Contempt

¶ 56    Next, Fouad challenges the trial court's order finding him in indirect civil contempt for failing to comply with the MSA's insurance requirements. The MSA incorporated into the dissolution judgment stated as follows:

"FOUAD shall maintain no less than $600,000.00 in life insurance on his life for the benefit of HALA and the children. *** HALA shall be named as irrevocable beneficiary for as long as FOUAD owes her any obligations under this Agreement for maintenance, property division or college education expenses for the children. FOUAD shall immediately obtain a disability policy which will secure at least one-half of his annual income should he become disabled."

The MSA also stated:

"Within 30 days of the effective date of this Agreement, FOUAD shall accomplish the following:

(a) Deposit copies of the life and disability insurance policies, certificates of insurance and/or proof of beneficiary designation with HALA. HALA shall have the right to request proof of said insurance on an annual basis. proof of said insurance on an annual basis. Within 10 days of a request for proof of life insurance and beneficiary designation, FOUAD shall comply with the request."

¶ 57    First, Fouad argues that the election of remedies doctrine barred Hala's contempt action because the MSA specified other remedies for the failure to comply with his insurance. Specifically, the MSA stated that "[i]n the event that FOUAD fails to maintain disability insurance, he shall be barred from seeking a reduction in his obligations to pay the children's education expenses and maintenance to HALA due to a decrease in his income as a result of disability." The MSA also stated that if Fouad died without maintaining the requisite life

insurance, Hala would have a *bona fide* claim against his estate for the shortfall against all other heirs.

¶ 58    In response, Hala argues that Fouad forfeited any reliance on the election of remedies doctrine, as he first raised this defense in his motion to reconsider.

¶ 59    The election of remedies doctrine bars a party from seeking inconsistent remedies for the same injury. *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 596-97 (2008). It applies only where one party's manifestation of her choice of remedy leads the other party to materially change his position in reliance thereon. Restatement (Second) of Contracts § 378 (1981). Furthermore, the doctrine constitutes an affirmative defense. See, *e.g.*, *Mill Creek Water Reclamation District v. Shodeen*, 2022 IL App (2d) 200599, ¶ 35.

¶ 60    An affirmative defense must be raised in a responsive pleading. *Beale Bank v. Barrie*, 2015 IL App (1st) 133898, ¶ 39. In addition, a motion to reconsider is intended to bring to the trial court's attention newly discovered evidence, changes in law or errors in the court's application of the relevant law. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. Thus, an affirmative defense raised for the first time in a party's motion to reconsider is considered forfeited. *In re Marriage of Benson*, 2015 IL App (4th) 140682, ¶ 46.

¶ 61    Fouad raised the election of remedies doctrine for the first time in his motion to reconsider. Accordingly, his argument thereon is forfeited. He also argues, however, that the court abused its discretion by holding him in civil contempt because the court never set a means of purging his contempt.

¶ 62    Civil contempt is coercive in nature and seeks only to secure obedience to the court's prior order. *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984). For that reason, a party must be permitted to purge himself of contempt. *Id.* at 289. Furthermore, no further sanctions are

imposed upon the contemnor's compliance with the order in question. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990). This stands in contrast with criminal contempt, which is intended to punish a contemnor for past conduct. *People v. Warren*, 173 Ill. 2d 348, 368 (1996).

¶ 63    Here, the trial court found Fouad in contempt for failing to obtain a disability policy and for not tendering Hala a copy of the life insurance policy within 30 days of the dissolution judgment's entry. The court did not, however, identify a means for Fouad to purge himself of contempt. In addition, Fouad had ultimately provided proof of life insurance. Accordingly, we reverse the court's contempt finding. That being said, it does not follow that the section 508(b) attorney fees awarded to Hala in conjunction with the contempt finding must be reversed.

¶ 64                                  E. Section 508(b) Fees

¶ 65    Section 508(b) of the Act states as follows:

> " In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2020).

Thus, where the court finds no compelling cause or justification for noncompliance, attorney fees are mandatory under section 508(b). *In re Marriage of Ackerly*, 333 Ill. App. 3d 382, 397 (2002). In addition, the party who has failed to comply with a court order bears the burden of proving justification or compelling cause for his noncompliance. *In re Marriage of Berto*, 344 Ill. App. 3d 705, 717 (2003). Furthermore, section 508(b) does not require a contempt finding. *In re Marriage of Ackerly*, 333 Ill. App. 3d at 397.

¶ 66    Here, the trial court expressly found that Fouad lacked compelling cause or justification for failing to comply with the dissolution judgment's requirement that he procure a disability policy and provide Hala with a copy of it within 30 days of the judgment's entry. The court was not required to accept Fouad's self-serving, albeit uncontradicted, testimony that he had applied for a disability policy from his employer but was turned down. *In re Marriage of Mayer*, 97 Ill. App. 3d 313, 315-16 (1981). The court was not required to believe that Fouad supplied this information to Hala's attorney within 30 days of the parties' divorce either. Additionally, Fouad acknowledged at trial that after being turned down, he did not apply for coverage elsewhere or ask to have his obligation modified. Accordingly, the trial court properly found that Fouad lacked compelling cause or justification for his noncompliance.

¶ 67    The record also supports the trial court's finding that Fouad lacked compelling cause or justification for failing to provide Hala with a copy of his life insurance policy within 30 days. While the MSA stated that "HALA shall have the right to request proof of said insurance on an annual basis," the court found Fouad knew not to wait for a request before providing her with the policy. We agree. We decline to transform Hala's right to make such a request under the MSA into a duty and prerequisite to Fouad's own compliance.

¶ 68    Fouad nonetheless argues that he honestly but mistakenly believed that Hala had been added as a beneficiary shortly after their marriage was dissolved. Even so, had he complied with the requirement to tender her a copy of the policy within 30 days, he would have learned of his mistake years earlier. Indeed, Fouad states that he discovered his mistake when gathering documents to show that Hala was a beneficiary of the life insurance policy. Because the record supports the trial court's determination that Fouad lacked compelling cause or justification for

22

his failure to comply with the dissolution judgment's insurance obligations, we find no basis to disturb the court's award of attorney fees.

¶ 69                                      F. Section 508(a) Fees

¶ 70     Fouad finally argues that the court abused its discretion by awarding Hala an additional $24,925 in attorney fees under section 508(a), which authorizes a trial court to "order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/750 (West 2020).

¶ 71     Section 508(a) authorizes the trial court to order one party to contribute to the other's costs and attorney fees after considering the parties' financial resources. *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 52. In addition, section 508(a) directs the court to consider section 503(j), which in turn requires the court to consider the factors found in section 503(d) and, if maintenance has been awarded, the factors found in section 504(a). *Id.* Those factors include the value of the property distributed to each spouse and the duration of the marriage, as well as the parties' economic circumstances, age, health, station, occupation, income, vocational skills, employability, needs and liabilities. 750 ILCS 5/503(d) (West 2020). Those factors also include the parties' realistic earning capacity, impairment thereof and standard of living during marriage. 750 ILCS 5/504(a) (West 2020). Furthermore, a party seeking attorney fees must show an inability to pay, which exists where the payment of attorney fees would undermine her financial stability. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. We review an award of attorney fees for an abuse of discretion. *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 66.

¶ 72     Here, the trial court awarded Hala attorney fees under section 508(a) "[b]ased upon the parties' respective financial circumstances and abilities to pay." Additionally, the court was

23

painfully aware of the intricacies of the parties' finances. Fouad acknowledged in his May 2021 motion to adjudicate the pending fee petitions that the court was "cognizant of the parties' respective financial positions through the evidence presented at the recent maintenance haring," and that the court could "review the pleadings and rule based upon its knowledge of the case and the financial circumstances of the parties." Absent any citation to legal authority, we reject his suggestion that the court was required to have made express findings regarding the numerous factors to be considered. We presume the trial court knew the law and applied it appropriately absent an affirmative showing to the contrary. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 91.

¶ 73    Urging us to find error, Fouad argues that Hala was awarded 75% of the marital estate and that he has paid over $1 million in Maintenance to Hala since 2006. Fouad again argues that Hala's financial situation has greatly improved and could have improved more had she made a greater effort to use her master's degree. We need not revisit the details. Suffice to say, the trial court was not required to disregard that the parties were married for over 23 years, that Hala gave up her own career to be a homemaker, that she had significant impediments to obtaining work as an accountant and that she had already paid significant attorney fees herself. Furthermore, the remaining $25,000 in attorney fees would nearly decimate her annual income of $28,000. Fouad's remaining arguments have already been rejected by the trial court and this one in the previously addressed issues. We find no abuse of discretion.

¶ 74                                III. Conclusion

¶ 75    The trial court properly interpreted the MSA's maintenance provisions and continued Hala's maintenance. The court also appropriately sanctioned Fouad under Rule 219(c). While the court erroneously held Fouad in indirect civil contempt, the court's award of attorney fees was warranted.

¶ 76     For the foregoing reasons, we reverse the trial court's contempt finding and affirm the judgment in all other respects.

¶ 77     Affirmed in part and reversed in part.